**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.

JERRY COURSON, a Missouri Citizen; and
CHRISTY COURSON, a Missouri Citizen,

                Plaintiffs.

v.

NARCONON FRESH START d/b/a A Life Worth
Saving, Inc., ASSOCIATION FOR BETTER
LIVING AND EDUCATION INTERNATIONAL;
and NARCONON INTERNATIONAL,

                Defendants.

**COMPLAINT AND JURY DEMAND**

      Plaintiffs Jerry and Christy Courson ("Plaintiffs"), through counsel, Ryan Hamilton of Hamilton Law, LLC, allege the following:

**I.**

**PARTIES**

1.     Plaintiffs Jerry and Christy Courson were, and at all relevant times to this Complaint are, residents of Missouri.

2.     Defendant Narconon Fresh Start d/b/a A Life Worth Saving (hereafter "Fresh Start"), is, and at all times relevant to this Complaint was, a corporation incorporated under the laws of, and with its principal place of business in, the State of California. Fresh Start has been at all relevant times transacting business in Fort Collins, Larimer County, Colorado. Fresh Start may be served

with process through its registered agent, Mark Kirwin, 4480 Market St., Ste. 804, Ventura, CA 93003.

3. Defendant Narconon International ("NI") is a California corporation with its headquarters in Los Angeles, California.

4. NI is the parent/licensor of Defendant Narconon Fresh Start. NI exercises control over the time, manner, and method of Fresh Start's operations.

5. NI was doing business in the State of Colorado by and through its agent and subsidiary/licensee Defendant Narconon Fresh Start. NI may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

6. Fresh Start and NI are subsidiaries of the Association for Better Living and Education ("ABLE"). ABLE oversees the drug rehabilitation, education, and criminal justice activities of the Church of Scientology including, but not limited to, Fresh Start and NI.

7. Defendant ABLE is a corporation registered in the State of California with its headquarters in Los Angeles, California.

8. ABLE controls the time, manner, and method of NI's and Fresh Start's businesses by actively managing their daily operations, including conducting inspections of Narconon centers and creating, licensing, and approving their marketing materials.

9. ABLE transacts business in the State of Colorado by and through its agents, Narconon International and Narconon Fresh Start. ABLE may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

## II.

## JURISDICTION AND VENUE

10. This Court has subject jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, and there is complete diversity between the parties.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## III.

## FACTUAL ALLEGATIONS

12.     On or about February 10, 2014, Plaintiff Jerry Courson was searching the Internet for help in finding an appropriate drug rehabilitation facility for his wife, Plaintiff Christy Courson.

13.     During his search, Jerry was referred to Fresh Start representative Josh Penn. Josh Penn recommended to Jerry that he admit Christy to Fresh Start for treatment. Josh Penn also referred Jerry to www.freshstart.net, a website for the program.

14.     Penn and the website represented that the Fresh Start treatment program has a 76% "success rate." As set forth in more detail below, this representation was false.

15.     Jerry explained to Penn that he was searching for a treatment program that provided extensive counseling. Penn indicated that counseling was part of the Fresh Start treatment program. But as Fresh Start has conceded in other lawsuits, counseling is not part of the Fresh Start treatment program.

16.     Penn and the website claimed that Fresh Start's sauna program, the New Life Detoxification Program, can reduce or eliminate drug cravings by flushing out residual drug toxins stored in a patient's fatty tissues.

17.     Penn and the website indicated that there is scientific research to support this claim.

18.     Fresh Start, Narconon International, and ABLE have been advised countless times there is no scientific evidence to support their claims that sweating in a sauna eliminates residual drug toxins or reduces drug cravings. As set forth below, Narconon International's own expert witness has admitted as much under oath during a deposition. Even so, Defendants continue making these claims.

19. The website indicated that Fresh Start offered individualized treatment. But each patient at Fresh Start receives the very same treatment regimen.

20. Penn and the website represented that the treatment program at Fresh Start is secular and that religion is in no way a part of the program. But the Narconon treatment program that Fresh Start provided Christy consisted entirely of having her unwittingly study Scientology and engage in Scientology rituals.

21. Penn represented to Jerry that Fresh Start would have doctors on the premises. But when Christy was at Fresh Start, there were no licensed medical professionals such as doctors or nurses on the premises. Instead, the staff consisted mainly of former patients who had "graduated" from the Fresh Start program.

22. Based on Penn's representations and the representations on Fresh Start's website, Jerry admitted his wife into the Fresh Start program. Plaintiffs paid $33,000.00 for the program.

23. After completing withdrawal at a third-party facility, Christy entered the Fresh Start program. Fresh Start provides the Narconon treatment program.

24. The Narconon treatment program consists of eight books based on the works of L. Ron Hubbard. The written materials are exactly the same for each patient regardless of the patient's particular reason for seeking treatment.

25. The material in the Narconon books has no apparent connection to the treatment of substance abuse. Instead, the books teach Scientology doctrines and concepts that beginning Scientologists study such as the Eight Dynamics of Existence, the Tone Scale, and the Conditions of Existence.

26. In addition, Fresh Start had Christy participate in its sauna program for ten days.

27. Under its sauna program, Fresh Start has patients sit in a sauna for five hours per day for five weeks. Fresh Start also has patients ingest Niacin and other vitamins way in excess of their recommended daily allowances as part of the sauna program.

Case 1:14-cv-01862-WYD   Document 1   Filed 07/06/14   USDC Colorado   Page 5 of 15

28. The sauna program Fresh Start offers and had Christy undergo is a Scientology ritual known as the "Purification Rundown." Fresh Start calls the sauna program the "New Life Detoxification Program."

29. There were no medical personnel such as doctors or nurses overseeing Christy during the sauna program.

30. Fresh Start claims that its sauna program has been scientifically shown to flush out residual drug toxins stored in fatty tissue thereby reducing or eliminating a person's drug cravings

31. Not only does the New Life Detoxification fail to live up to Fresh Start's claims about its benefits, the sauna program is dangerous. By having students ingest extreme doses of Niacin and other vitamins while sitting in extreme temperatures for hours, the sauna program unnecessarily exposes students to serious health risks including severe dehydration.

32. In a prior lawsuit, Dr. Louis A. Casal, an expert **retained by** Narconon International and Narconon of Northern Georgia in a wrongful death suit filed against those entities, testified at his deposition. The relevant portions of Dr. Casal's deposition testimony are attached hereto as **Exhibit A.** When asked under oath about the New Life Detoxification sauna program – the same sauna program at issue in this case – he testified that there is no scientific basis for the notion that sweating in a sauna detoxifies a person's body or treats addiction:

> Q. Have you looked at the Narconon literature on what Narconon contends the benefits from the sauna are?
>
> A. [Dr. Casal] Yes, I have.
>
> Q. And the sauna program, what Narconon contends is that in – it in fact detoxifies your body. True?
>
> A. True.
>
> Q. But there's no scientific basis that you can point me to to support that contention, is there, sir?

  A. You're correct.

  Q. So when Narconon states that the sauna program detoxifies its students, you're not aware, as a medical doctor, of any scientific basis for that contention?

  A. I agree.

Exhibit A, Deposition of Dr. Louis Casal, 136: 21 – 137:9.

33. Despite their own expert's admission that there is no scientific basis for the idea that patients sweating in the New Life Detoxification Program treats addiction, Defendants continue to represent to prospective patients, as they did to Plaintiffs, that the New Life Detoxification has been "scientifically and medically proven" as effective.

34. Narconon claims a success rate of over 70% for all Narconon centers, including Narconon Fresh Start d/b/ A Life Worth Saving. Narconon has published no studies or other verifiable evidence to support their claimed success rates.

35. Dr. Casal, the medical expert retained by Narconon International in another lawsuit, testified at his deposition that he was not convinced Narconon's claimed success rate was true:

  Q. Okay. What are you relying on – well, let me ask you this; do you believe that 76 percent success ratio is accurate?

  A. [Dr. Casal].  Mr. Harris, I'll be honest with you, that's a big number.

  Q. Yeah, it's -- it's a real big number.

  A. It's a big number.

  Q. And it's completely inconsistent –

  A. I – I hope it's true, but, I mean, I would need some convincing.

           …

  Q. Okay. Do you have any idea where Narconon is getting the numbers that it's using?

> A. You know, in the interest of time – I just didn't have enough time to delve deeper into those studies, Mr. Harris. And I – I would be happy to, but, no, I don't have a clear understanding of where that 70 – 70-something number came from, no, sir.

Exhibit A, Deposition of Dr. Louis Casal, 124:21 – 125:5; 126:1 – 7.

36. Defendants are well aware that there is no support for Narconon Fresh Start's claimed success rate, but nonetheless advertised a 76% success rate to Jerry Courson.

37. Narconon documents indicate that the Narconon program is used to recruit patients into the Church of Scientology. For example, a Narconon document titled the "Narconon Technical Line-Up" provides a flow chart of a patient's experience into and through the Narconon program. The document shows that when a patient finishes the Narconon program, the patient is to be "route[d] to the nearest Org for further services if the individual so desires." "Org" is Scientology jargon for an individual church providing services for the Church of Scientology. A copy of the "Narconon Technical Line-up" is attached hereto as **Exhibit B**.

38. Defendants consider the Narconon program to be the "Bridge to the Bridge." That is, Narconon considers its program to be an initial step into getting on Scientology's "Bridge to Total Freedom," the key spiritual journey that practitioners of the Scientology religion undertake. See, e.g., "Narconon News, 1974, Volume 6, Issue 3: Narconon Is The Bridge to The Bridge," attached hereto as **Exhibit C**.

39. Christy became increasingly alarmed by the strange "treatments" she was being subjected to at Fresh Start and the unprofessional conduct of staff.

40. During one of the drills or "Training Routines" Fresh Start used to "treat" Christy, staff and students sexually harassed her repeatedly. During TR0, known as "bullbaiting," staff and other students repeatedly told Christy that she had a mouth that looked like she could perform fellatio well.

41. Another patient with whom Christy was paired for this Training Routine even went so far as to attempt to get Christy to believe that he was going to take off his pants and expose himself to her during the exercise. The patient engaged in this conduct in front of the Fresh Start staff member who was supervising the exercise.

42. As part of this episode, Fresh Start staff even led a chant about Christy engaging in sexual conduct in front of various other patients and staff members. Christy, married to Plaintiff Jerry Courson, was deeply humiliated. Her husband felt incredibly outraged and guilty that he had found the Fresh Start facility that subjected his wife to this behavior.

43. Despite paying a substantial sum of money for treatment, Plaintiffs removed Christy from the program on or about March 8, 2014. Plaintiffs removed Christy from the program because it was unsafe, it bore no resemblance to what Plaintiffs had been promised, and was hurting rather than helping Christy.

## **ALTER EGO LIABILITY**

44. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

45. Defendants Narconon Fresh Start and NI have all appearances of being a corporate sham illusion and mere instrumentalities of Defendant ABLE.

46. ABLE heavily influences Narconon Fresh Start and NI and governs and controls nearly every aspect of their business activities.

47. There is such unity of interest and ownership among Narconon Fresh Start, NI, and ABLE that they are inseparable from one another.

48. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a design or scheme to perpetrate a fraud. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a scheme to fraudulently induce patients to enroll in one of their treatment facilities and

pay substantial funds. Further, Defendants perpetrate this scheme to recruit for and promote the Scientology religion.

49. It is interests of justice to disregard the corporate shield and treat Defendants Narconon Fresh Start, NI, and ABLE as identical. Accordingly, each cause of action listed below is made against all Defendants.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

50. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

51. Defendants contracted with Jerry Courson to provide Christy Courson secular drug and alcohol treatment. Fresh Start was a signatory to the contract.

52. As consideration, Plaintiffs paid Defendants $33,000.00.

53. Defendants breached this contract by, *inter alia*: (i) failing to provide services constituting drug and alcohol treatment; and (ii) providing Scientology in lieu of drug and alcohol treatment.

54. Defendants' breaches have caused Plaintiffs to suffer damages in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF

## FRAUD

55. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

56. The following is a non-exhaustive list of false representations Defendants knowingly made to the Plaintiffs: (i) that the Narconon program has a 76% success rate; (ii) that Christy Courson would receive counseling related to substance abuse at Fresh Start; (iii) that the New Life Detoxification sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; and (iv) that Plaintiff Christy Courson would be under the care of a doctor or nurse at Fresh Start; and (v) that the treatment program at Fresh Start is secular.

57. Fresh Start employee Josh Penn made these representations to Jerry Courson on or about February 10, 2014, with the intent that they be acted upon. Penn also referred Jerry to www.freshstart.net where he read these same false representations on the program's website.

58. Plaintiffs did not know that these statements were false.

59. As a proximate result Plaintiffs' reliance on Defendants' false representations, Plaintiffs have sustained damages in excess of $75,000.

## THIRD CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

60. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

61. Defendants' representative Josh Penn intentionally concealed material facts to Jerry Courson when persuading Jerry to admit Christy to Fresh Start. The facts he failed to disclose include the fact the Narconon treatment program consists of the works of L. Ron Hubbard, the founder of Scientology. Further, Penn concealed the fact that patients in the Narconon program are instructed to practice and study the same materials as beginning Scientologists.

62. Jerry Courson was unaware of these facts when speaking to Defendants' representatives about obtaining drug treatment for his wife.

63. Representative Penn intentionally concealed these facts because he knew that Jerry Courson would not admit his daughter to Fresh Start if he knew these facts.

64. As result of Defendants' concealment of these material facts, Plaintiffs have suffered injuries in excess of $75,000.

## FOURTH CLAIM FOR RELIEF

## NEGLIGENCE

65. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

66. Defendants owed Plaintiffs a duty to render substance abuse treatment to Christy Courson in a manner that did not subject her to an unreasonable risk of harm.

67. Defendants breached these duties by: (i) instructing Christy to sit in a sauna for 5 hours per day while ingesting extreme dosages of Niacin and other vitamins; (ii) failing to staff the Fresh Start treatment facility, and particularly the sauna, with any qualified medical personnel; (iii) failing to provide duly qualified counselors to administer treatment; and (iv) providing Scientology in lieu of substance abuse treatment; (v) administering "treatments" to Christy that involved sexually harassing her.

68. As a proximate result of Defendants' breaches of the above duties, Plaintiffs have suffered injuries in excess of $75,000.00.

## FIFTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

70. Defendants engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing Christy Courson severe or extreme emotional distress.

71. Defendants' extreme and outrageous conduct consisted of, *inter alia*: (i) providing Christy Courson Scientology in lieu drug treatment or substance abuse counseling; and (ii) preying on Plaintiffs' vulnerabilities and attempting to recruit Christy into Scientology under the guise of providing drug treatment.

72. As a proximate result of Defendants' extreme and outrageous conduct, Christy Courson has suffered severe and extreme emotional distress way beyond what any person in a civilized society should be expected to endure. Further, Defendants' outrageous conduct has put severe strain on Plaintiffs' marriage.

## SIXTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

73. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

74. On or about February 10, 2014, Defendants, through Fresh Start employee Josh Penn, and on their website www.freshstart.net, made the following false representations of fact to Jerry Courson: (i) that the Narconon program has more than a 76% success rate; (ii) that Christy would receive counseling related to substance abuse at Fresh Start; (iii) that the New Life Detoxification sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; and (iv) that Christy would be under the care of a doctor or nurse at Fresh Start; and (v) that the treatment program offered at Fresh Start is secular.

75. Defendants made these statements to Jerry Courson without exercising reasonable care.

76. Defendants made these statements to guide Jerry Courson in his business transaction with Defendants.

77. Defendants knew that Jerry Courson would rely on these representations of fact.

78. Jerry Courson relied on these false representations of fact to his detriment and Plaintiffs have suffered injuries in excess of $75,000.

## SEVENTH CLAIM FOR RELIEF

### CLAIM UNDER COLORADO CONSUMER PROTECTION ACT, C.R.S.A. § 6-1-105

79. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

80. Defendants engaged in unfair or deceptive trade practices by knowingly making false representations of fact to Jerry Courson.

81. On or about February 10, 2014, Defendants knowingly made the following false representations to Jerry Courson, both through its representatives and on its website to the public

at large: (i) that the Narconon program has a 76% success rate; (ii) that Christy Courson would receive counseling related to substance abuse at Narconon; (iii) that Narconon's sauna program is safe and has been scientifically shown to eliminate or reduce drug cravings; (iv) that Christy Courson would be under the care of a doctor or nurse at Fresh Start; (v) that Fresh Start provides individualized treatment; and (vi) that Fresh Start's treatment program is secular.

82.     As part of a "bait and switch" scheme, Defendants made these false representations in the course of its business to induce Jerry Courson to admit his wife to Fresh Start.

83.     Defendants' unfair or deceptive trade practices complained of herein significantly impact the public.

84.     Defendants make numerous false claims about their treatment program to the public at large on their website at www.freshstart.net. These false claims include: (i) the treatment program offered at Fresh Start d/b/a A Life Worth Saving has a 76% success rate; (ii) that Fresh Start's sauna program can remove drug residues that cause drug cravings and relapse; (iii) that religion is not part of the Narconon treatment program; and (iv) that Fresh Start offers individualized treatment.

84.     Defendants have deceived numerous other consumers using these same practices. Consumers seeking drug rehabilitation services for their loved ones such as Plaintiff Jerry Courson are often in an urgent and vulnerable situation. Consequently, they often are left with relatively little bargaining power in their transactions with Defendants. Defendants' deceptive trade practices have the potential to impact adversely numerous consumers seeking drug rehabilitation services in the future.

85.     Defendants further engage in a dangerous "bait and switch" scheme by advertising their services as a drug rehab program on their website at www.freshstart.net. But when patients such as Plaintiff Christy Courson enter Defendants' program they receive nothing but Scientology doctrine and dangerous Scientology rituals such as the "Purification Rundown," *i.e.*, the New Life

Detoxification Program. The Scientology doctrine and rituals are not even related to substance abuse or addiction.

86. Defendants' deceptive trade practices, if not stopped, will continue to have a negative impact on the public. This impact on the public includes keeping persons who need actual rehabilitation services from getting them.

87. As a consequence of Defendants' unfair or deceptive trade practices, Plaintiffs have suffered damages in excess of $75,000. Plaintiffs are entitled to all damages recoverable under the Colorado Consumer Protection Act, including without limitation, treble damages and attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

88. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

89. Defendants received benefits from Plaintiffs including, without limitation, $33,000.00 for drug rehabilitation services that Defendants promised to provide.

90. Defendants did not provide, nor were they equipped to provide, Plaintiff Christy Courson any of the drug rehabilitation services they promised to provide.

91. Under the circumstances, it would be unjust to allow Defendants to retain the benefits they obtained from Plaintiffs.

## NINTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

92. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

93. Defendants owed Plaintiff Christy Courson a legal duty of care in undertaking to provide her services constituting drug rehabilitation.

94.  Defendants violated duty of care owed to Christy Courson and subjected her to unreasonable risks of bodily harm by, *inter alia*, having Christy spend several hours per day in a sauna for while ingesting extreme doses of Niacin without medical supervision, and by providing her Scientology instead of actual substance abuse treatment.

95.  As a consequence of Defendants' breaches, Plaintiff Christy Courson has suffered severe emotional distress.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. Judgment in favor of Plaintiffs and against Defendants for damages in such amounts as may be proven at trial;

B. Compensation for special, general, and treble damages;

C. Reasonable attorney's fees and costs of suit;

D. Interest at the statutory rate;

E. All further relief, both legal and equitable, that the Court deems just and proper.

DATED this 6th day of July, 2014.

Respectfully submitted,

By: [signature]

RYAN A. HAMILTON, ESQ.
NV BAR NO. 11587
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
ryan@hamiltonlawlasvegas.com

*Attorney for Plaintiffs*